1  Heinz Binder (SBN 87908)
   Wendy W. Smith (SBN 133887)
2  Binder & Malter, LLP
   2775 Park Avenue
3  Santa Clara, CA 95050
   T: (408) 295-1700
4  F: (408) 295-1531
   Email: Heinz@bindermalter.com
5  Email: Wendy@bindermalter.com

6  Ivo Keller (SBN 245909)
   Brent D. Meyer (SBN 266152)
7  SSL LAW FIRM LLP
   505 Montgomery Street, Suite 620
8  San Francisco, CA 94111
   T: (415) 814-6400
9  F: (415) 814-6401
   Email: ivo@ssllawfirm.com
10 Email: bmeyer@ssllawfirm.com

11
12 Attorneys for Creditors
   Carr & Ferrell LLP and Ezio Valdevit

13                 UNITED STATES BANKRUPTCY COURT

14       NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

15

16 | In re: Creagri, Inc. | Case No. 4:20-bk-41289-CN |

17                Debtor.              Chapter 7

18

19 _____

20 | Carr & Ferrell, LLP, and Ezio Valdevit, | Ad. Pro. No. 21-04040 |

21                Plaintiff

22 v.                                 **FIRST AMENDED COMPLAINT FOR
                                      FRAUDULENT TRANSFERS,
23 Dr. Roberto Crea, an individual, also known as   VIOLATIONS OF CALIFORNIA
   Dr. Robert Crea; Caliscana, LLC, a California   UNIFORM VOIDABLE TRANSACTIONS
24 Limited Liability Company; Oliphenol, LLC, a    ACT, BREACH OF FIDUCIARY DUTY,
   Delaware Limited Liability Company;             BREACH OF CONTRACT, AND UNFAIR
25 2199933 Ontario Inc., a Canadian               BUSINESS PRACTICES**
   Corporation; and DOES 1-20,
26

27                Defendants.

28

Case: 21-04040   Doc# 21   Filed: 01/31/22   Entered: 01/31/22 18:11:33   Page 1 of 26

Ezio Valdevit ("Valdevit") and Carr & Ferrell LLP ("Carr & Ferrell" and, with Valdevit collectively, "Plaintiffs"), have purchased the right to pursue certain claims against Dr. Roberto Crea and the other defendants from the Chapter 7 Bankruptcy estate referenced in the caption above. Plaintiffs are initiating this action to recover certain assets received by defendants, or their value, for application against Plaintiffs' claims and for the benefit of the bankruptcy estate.

## PARTIES

1.     Creagri, Inc. ("Creagri" or the "Debtor") is a California corporation and is the Debtor in the above-referenced bankruptcy case (the "Bankruptcy Case").

2.     Valdevit is an individual residing in California, is a creditor of the Debtor, and filed a proof of claim in the Bankruptcy Case on June 30, 2021 for $3,208,488.58.

3.     Carr & Ferrell is a limited liability partnership established in the State of California, is a creditor of the Debtor, and filed a proof of claim in the Bankruptcy Case on May 12, 2021 for $878,986.47.

4.     Plaintiffs acquired from the Chapter 7 Trustee of the Debtor's bankruptcy estate (the "Estate") all of the Estate's right, title, and interest in any and all claims of any kind that the Estate has or may have against Dr. Crea (defined below), any person or entity related to Dr. Crea, any entity in which Dr. Crea has an interest, and any person or entity to whom or which any of the Debtor's assets were transferred either before or after the Debtor filed its bankruptcy petition on August 3, 2020. The purchased claims acquired include, but are not limited to, claims under 11 U.S.C. §§ 544, 547, 548, and 549, and any other claims that may exist under federal or state law.

5.     Plaintiffs are informed and believe, and thereon allege, the Debtor is currently suspended by the California Secretary of State.

6.     Dr. Roberto Crea ("Dr. Crea") is an individual. Plaintiffs are informed and believe, and thereon allege, that Dr. Crea resided in the State of California at the time all of the events alleged below occurred, and that he has sometimes used the name Dr. Robert Crea.  As of the date of filing this action, Dr. Crea is the Debtor's responsible individual in the Bankruptcy Case. At all times relevant to this action, Dr. Crea held a controlling interest in the shares of Creagri.

7.     Caliscana, LLC ("Caliscana") is a limited liability company established in the State of

Case: 21-04040   Doc# 21   Filed: 01/31/22   Entered: 01/31/22 18:11:33   Page 2 of 26

California on or about January 7, 2019. Plaintiffs are informed and believe that at all times relevant to this action, Dr. Crea was and continues to be the sole manager and member of Caliscana.

8.     Oliphenol, LLC ("Oliphenol") is a limited liability company established in the State of Delaware and is registered as a foreign limited liability company with the Secretary of State of the State of California.  Plaintiffs are informed and believe, and thereon allege, that at all times relevant to this action, Dr. Crea was and continues to be the Chief Executive Officer, Chief Science Officer, and a major Member of Oliphenol.

9.     Plaintiffs are informed and believe, and thereon allege, that 2199933 Ontario Inc. ("Ontario Inc.") is a corporation organized under the laws of the Province of Ontario, Canada.

10.    Plaintiffs do not know the true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 1 through 20, inclusive, and therefore sue said Defendants under fictional names.  Plaintiffs allege, upon information and belief, that each fictionally named Defendant has participated directly or indirectly in the wrongful acts herein alleged or obtained an interest in the property Plaintiffs seek to recover.  Plaintiffs will amend this Complaint to show their true names and capacities if and when the identities of said persons become known to them.  All of the named Defendants and DOES 1 through 20 are herein collectively referred to as "Defendants."

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §1334.

12.    Venue is proper before this Court pursuant to 28 U.S.C. §1409(a) by virtue of the above-referenced Bankruptcy Case pending before the United States Bankruptcy Court for the Northern District of California, Oakland Division.

13.    Creagri filed for bankruptcy under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") on August 3, 2020.

14.    This Complaint is filed pursuant to Fed. R. Bank. Proc. 7001(1), (2), (7) and (9).

15.    This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §157(b)(2) (A), (E), (F), (H), (K) and (O).

16.    The claims for relief are brought under the provisions of the Bankruptcy Code and applicable state law.  The Bankruptcy Court has jurisdiction to enter final orders and judgments as to

Case: 21-04040   Doc# 21   Filed: 01/31/22   Entered: 01/31/22 18:11:33   Page 3 of 26

the claims under the Bankruptcy Code, and Plaintiffs consent to entry by this Court of final orders and judgments regarding all of their claims for relief.

## BACKGROUND FACTS

17.    After the filing of the Bankruptcy Case, the Chapter 7 Trustee took extensive testimony from the Debtor's responsible individual, Dr. Crea, and obtained documents from Dr. Crea on behalf of the Debtor. Carr & Ferrell also conducted a Rule 2004 examination of Dr. Crea. Many of the allegations below are based on documents and testimony provided during that process, collectively referred to herein as the "Debtor's Information."

18.    The Debtor's Information shows that this action involves an insider's "looting" of a corporation shortly before filing of a bankruptcy case. In 2018 and 2019, Dr. Crea – the Debtor's President, CEO, and majority shareholder – arranged for Creagri to "sell" all its assets to himself in his individual capacity; then assigned those assets to Caliscana, a corporate entity entirely in his control; and then had Caliscana transfer the same assets to Oliphenol, a new company Dr. Crea formed with new third-party investors. Dr. Crea received cash and a position running the new company. But the only purported compensation Creagri received was the "cancellation" of certain promissory notes that Dr. Crea himself held, which notes were unsecured and unenforceable because they had been in default for well beyond the governing statute of limitations. Creagri's many other creditors received nothing. The details of these transactions were as follows:

### Corporate Formation and 2004 & 2008 Investments

19.    Based upon the Debtor's Information, Creagri was formed originally as a limited liability company and subsequently converted to a corporation. The company's business purpose was to develop olive oil-based health products for sale to distributors and consumers.

20.    The Debtor's Information shows that in 2002, Creagri sought venture capital investment and obtained a commitment of approximately $6.3 million from third-party venture capital funds, among others. Certain independent investors (the "Investors") invested approximately $5 million in Creagri in exchange for certain preferred stock ("Preferred Shares"). As a condition for their investment (the "2002 Investment"), the Investors required that Dr. Crea cancel certain promissory notes he held from Creagri and take a larger equity interest in Creagri instead.

21.     The Debtor's Information further shows that in 2004, Creagri sought additional investment from the Investors. To facilitate such investment, Creagri issued $2 million in convertible promissory notes (the "2004 Bridge Notes"). The Debtor's Information shows that approximately $530,000 of the 2004 Bridge Notes were issued to Dr. Crea, as note holder, and the remainder were issued to certain of the Investors.

22.     The 2004 Bridge Notes are substantially identical, are dated February 15, 2004, and were due to be paid July 31, 2004. The 2004 Bridge Notes were convertible to shares in the company upon certain qualifying events, which events never occurred.

23.     The 2004 Bridge Notes are executed on behalf of Creagri by Dr. Crea, and Dr. Crea testified that he was CEO and a member of the Board of Directors of Creagri at the time he executed them.

24.     Plaintiffs are informed and believe, and thereon allege, that at the time Dr. Crea executed the 2004 Bridge Notes on behalf of Creagri, he had no reason to believe that the company would be able to pay the notes when they were due. Plaintiffs are informed and believe, and thereon allege, that the Investors had no reason to believe that Creagri would be able to pay the 2004 Bridge Notes when they became due, either.

25.     Based on the Debtor's Information, the 2004 Bridge Notes were not secured, and all of the purported lenders for the 2004 Bridge Notes were shareholders of Creagri. No part of the 2004 Bridge Notes were paid by Creagri or any other party. Accordingly, although the transactions evidenced by the 2004 Bridge Notes were styled as loans, they were, in fact, further capital investments in Creagri by Dr. Crea and the Investors.

26.     Based on the Debtor's Information, in 2008 the Investors sought to withdraw from the investment. Creagri entered into a second "bridge" financing by issuing convertible promissory notes to certain of the Investors (the "2008 Bridge Notes"). The Debtor's Information again shows that all of the lenders for the 2008 Bridge Notes were shareholders of Creagri. The 2008 Bridge Notes are substantially identical, were issued on May 1, 2008, and were due December 31, 2008. Attached hereto as Exhibit A is a true and correct copy of one of the 2008 Bridge Notes that was produced by Dr. Crea.

27. The 2008 Bridge Notes were again signed by Dr. Crea on behalf of Creagri. Plaintiffs are informed and believe, and thereon allege, that when the 2008 Bridge Notes were executed, neither the Investors nor Dr. Crea had any reason to believe Creagri would be able to pay the 2008 Bridge Notes when they were due, or at any other time.

28. Based on the Debtor's Information, the total face value of the 2008 Bridge Notes was $985,331.10. Of that amount, approximately $425,000 in value was attributed to notes held by entities owned and controlled by Dr. Crea. The 2008 Bridge Notes provided for interest to accrue at the rate of 12% per year in violation of California usury laws. Attached hereto as <u>Exhibit B</u> is a true and correct copy of a spreadsheet provided by Dr. Crea which, according to the Debtor's Information, reflects an accurate allocation of the 2004 Bridge Notes and the 2008 Bridge Notes.

29. Based on the Debtor's Information, although the 2008 Bridge Notes are described as "secured," no security agreement for said notes was signed.

30. According to the Debtor's Information, none of the 2008 Bridge Notes were paid when due by Creagri or any other party, and no action was taken by any party to enforce the 2008 Bridge Notes. Accordingly, although the 2008 Bridge Notes were styled as loans, they were, in fact, further capital investments in Creagri by Dr. Crea and the Investors.

**Dr. Crea's Buyout of the Investors**

31. Based on the Debtor's Information, in April of 2009 Dr. Crea entered into a series of agreements to acquire all of the Investors' interests in the 2004 Bridge Notes, the 2008 Bridge Notes, and the Preferred Shares (the "2009 Transaction").

32. The Debtor's Information shows that Dr. Crea, individually and through entities owned and controlled by him, paid the Investors approximately $3 million in exchange for transferring the Investors' interests in the 2004 Bridge Notes, the 2008 Bridge Notes, and the Preferred Shares to Dr. Crea.

33. Based on the Debtor's Information, the 2009 Transaction did *not* include any assignment of any security agreements between the Investors and Creagri, or of any liens against Creagri's assets. To the contrary, the Debtor's Information shows that the Investors released, and did not assign, any liens they might have had against Creagri's assets as part of the 2009 Transaction.

Case: 21-04040   Doc# 21   Filed: 01/31/22   Entered: 01/31/22 18:11:33   Page 6 of 26

34. Attached hereto as <u>Exhibit C</u> is a true and correct copy of the agreement that documents the 2009 Transaction--a Stock and Notes Purchase and Sale Agreement--which was provided by Dr. Crea (the "2009 Note and Stock Purchase Agreement"). The 2009 Note and Stock Purchase Agreement contains an express release of all of the Investors' liens at Section 6.2.

35. Based on the Debtor's Information, to the extent Dr. Crea or any entity controlled by him acquired the Investors' interests in the 2004 Bridge Notes, the 2008 Bridge Notes, or any other interests held by the Investors, such acquisition was unsecured by any asset of Creagri.

36. Plaintiffs are informed and believe and thereon allege that the recordation in 2015 by Dr. Crea of a financing statement referencing 2008 Bridge Notes with the California Secretary of State did not create a new security interest in the Debtor's assets or revive the old ones (if they existed), as the underlying security agreements (if any existed) had been terminated by the Investors in the 2009 Transaction.

37. Pursuant to the 2009 Note and Stock Purchase Agreement, the purchase price for the promissory notes and preferred shares held by the Investors was allocated as follows:

Preferred shares:    $1,617,000

2004 Bridge Notes:    $473,548

2008 Bridge Notes:    $909,280

38. The Debtor's Information shows that, as of the time of the 2009 Transaction, the 2004 Bridge Notes had already been in default and remained unpaid, and the 2008 Bridge Notes had been in default since December 31, 2008 and remained unpaid.

39. Based on the Debtor's Information, at no time within four years after either of the default dates or the date of the 2009 Transaction, did Dr. Crea attempt to collect on either the 2004 Bridge Notes or the 2008 Bridge Notes, and there is no written acknowledgement of the debt or tolling agreement during that time. Thus, Plaintiffs are informed and believe and thereon allege that at a time no later than December 14, 2014, the holder of the 2008 Bridge Notes was barred from bringing an action to collect them and the 2008 Bridge Notes no longer represented a right to payment.

**Renovo Negotiations**

40. The Debtor's Information shows that during 2016 and 2017, the Debtor had ongoing

Case: 21-04040   Doc# 21   Filed: 01/31/22   Entered: 01/31/22 18:11:33   Page 7 of 26

discussions with a company in Italy called "Renovo" a potential joint venture.

41.     The Debtor's Information reveals that in or around September 2018, the Debtor and Renovo entered into an agreement whereby the Debtor would sell its intellectual property and certain contracts to a new company for $1,750,000.  Plaintiffs are informed and believe and thereon allege that the sale did not include the Debtor's inventory.  The Debtor's Information reveals that the Debtor subsequently valued its inventory at approximately $762,000.

### The 2019 Transaction

42.     Based on the Debtor's Information, between December 2018 and January 2019, Creagri, Dr. Crea, Caliscana, Oliphenol, and Ontario Inc. entered into a multi-part agreement that resulted in Oliphenol acquiring all the assets of Creagri without any of its liabilities, subject to a security interest to be held by Ontario, Inc. in all of the assets. The transaction resulted in Dr. Crea or his controlled company Caliscana receiving all of the proceeds and Creagri receiving nothing (the "2019 Transaction").

43.     The 2019 Transaction is documented in a series of documents all of which are dated between mid-December 2018 and February 2019.  Most of the documents appear to have been prepared by the same office with the same formatting, type font and drafting style.  Most of the documents are dated February 5, 2019, written in the same handwriting.  The documents appear to have been part of a single "closing book."  The Plaintiffs are informed and believe and thereon allege that the various parts of the 2019 Transaction were intended by all parties, including by Dr. Crea and Raymond Chyc, to be a single transaction.  The 2019 Transaction had at least four components:

### Creagri Assets Transferred from Debtor to Dr. Crea

44.     Dr. Crea arranged for Creagri to transfer all of its assets to himself, in his personal capacity, without taking on any of its liabilities (the "Creagri Transfer").  The Creagri Transfer was evidenced by a document entitled Sale of Assets to Secured Creditor dated as of December 17, 2018 (the "Creagri Sale Agreement"). A true and correct copy of the Creagri Sale Agreement which was provided by the Debtor is attached hereto as Exhibit D.

45.     The Creagri Sale Agreement appears to be signed by Dr. Crea in his individual capacity and by Anthony DiLio as Chairman of the Board.

46.     Plaintiffs are informed and believe and thereon allege that neither the Creagri Transfer nor the Creagri Sale Agreement were ever approved by a properly-called board of directors meeting nor by a shareholder vote.  The Debtor's Information reflects a document purporting to be a resolution by the Debtor's board of directors which was unsigned. The Debtor's Information also reflects a document purporting to be minutes of a stockholder meeting approving the sale, despite the fact that no such meeting was ever called. Attached as <u>Exhibit E</u> is a true and correct copy of the document provided by Dr. Crea as part of the 2009 Transaction reflecting the purported shareholder meeting minutes.

47.     Exhibit E asserts that it records the vote of "stockholders" but it does not identify the date, or the identity of the stockholders, whether there was a quorum, who made the motion, or whether Dr. Crea, who was to directly benefit from the proposed transaction, voted.  Only Dr. Crea appears to have signed it.

48.     Under the Creagri Sale Agreement, Creagri purported to sell, convey, assign, transfer and deliver to Dr. Crea all of Creagri's right, title and interest in and to, among other things, all of Creagri's tangible personal property, including its inventory; data and records; patents, trademarks and copyrights; and other intellectual property rights (collectively, the "Creagri Assets").

49.     The only purported consideration to Creagri provided for in the Creagri Sale Agreement was the cancellation of the 2008 Bridge Notes, which, in light of the 2009 Transaction, were held by Dr. Crea.  Based on the Debtor's Information, Creagri and its other creditors received no consideration of any kind.

50.      Except for the self-serving recitations in the Creagri Sale Agreement—which appears not to have been approved by either the Board of Directors or by the shareholders—the Debtor's Information does not reflect that the obligations under 2008 Bridge Notes had ever been reaffirmed by the Debtor after the Notes had expired and the statute of limitations had run. The Plaintiffs are informed and believe, and thereon allege, that the Debtor would have had no business reason to reaffirm the 2008 Bridge Notes after they had expired. Thus, at the time of the 2019 Transaction, the 2008 Bridge Notes did not represent a right to be paid by the holder.

51.     The Creagri Sale Agreement also recites that Dr. Crea is "foreclosing" on his security

Case: 21-04040   Doc# 21   Filed: 01/31/22   Entered: 01/31/22 18:11:33   Page 9 of 26

1  interest in the Creagri Assets. Based on the Debtor's Information, no security interest ever secured the
2  2008 Bridge Notes.

3      52.   The Debtor's Information reflects that the 2008 Bridge Notes were never actually
4  cancelled. The Plaintiffs are informed and believe that that Dr. Crea never filed a UCC3 notice of
5  termination of the alleged security interest with the California Secretary of State.

6      53.   The 2019 Transaction is documented in a series of documents all of which are dated
7  between mid December 2018 and February 2019.  Most of the documents appear to have been
8  prepared by the same office with the same formatting, type font and drafting style.  Most of the
9  documents are dated February 5, 2019, written in the same handwriting. The documents appear to
10  have been part of a single "closing book." The Plaintiffs are informed and believe and thereon allege
11  that the various parts of the 2019 Transaction were intended by all parties, including by Dr. Crea and
12  Raymond Chyc, to be a single transaction.

13  **Dr. Crea Transfers Creagri Assets from Himself to the Shell Company Caliscana**

14      54.   The Debtor's Information shows that Dr. Crea purported to transfer all of his interest in
15  the Creagri Assets to an entity he formed to hold the assets, Caliscana.  Plaintiffs are informed and
16  believe and thereon allege that Caliscana was created on January 7, 2021. This transfer of the Creagri
17  Assets from Dr. Crea to Caliscana occurred on the same day, according to the Debtor's documents,
18  and was further documented on January 15, 2019. (collectively, the "Caliscana Transfer Documents").
19  True and correct copies of the Caliscana Transfer Documents are attached hereto as Exhibit F.

20      55.   The Caliscana Transfer Documents state that the transfer of the Creagri Assets to
21  Caliscana was "for good and valuable consideration," but neither document specifies what
22  consideration (if any) was provided.  Plaintiffs are informed and believe, and thereon allege, that there
23  was no consideration for this transfer, and that Dr. Crea used his wholly-owned company Caliscana for
24  the purpose of transferring the Creagri Assets to impede Creagri's creditors in their pursuit of the
25  assets.

26      56.   Plaintiffs are informed and believe that Caliscana never had any independent business,
27  owned any significant assets other than holding the Creagri Assets for two weeks before handing them
28  to Oliphenol, and then holding the interest in Oliphenol and the proceeds of the sale on behalf of Dr.

Case: 21-04040   Doc# 21   Filed: 01/31/22   Entered: 01/31/22 18:11:33   Page 10 of 26

Crea.

**Dr. Crea Transferred Creagri Assets from the Shell Company Caliscana to Oliphenol**

57.     The Debtor's Information shows that Dr. Crea and two new investors, Raymond Chyc and Steve Stansell, sometimes doing business as James Henry Innovations, became members and officers of a new entity, Oliphenol, in December 2018 or January of 2019.  Plaintiffs are informed and believe and thereon allege that Raymond Chyc (or companies controlled by him) owned more than 20% of Oliphenol.

58.     Dr. Crea purported to transfer all of the Creagri Assets from Caliscana to Oliphenol. That transfer was documented in an Asset Purchase Agreement dated as of January 21, 2019 (the "Oliphenol Sale Agreement").  A true and correct copy of the Oliphenol Sale Agreement which was provided by Dr. Crea on behalf of the Debtor is attached hereto as Exhibit G.

59.     Based on the Debtor's Information, Dr. Crea, directly and through entities owned and controlled by him, received payment totaling $1,750,000, plus a 40% ownership interest in Oliphenol as a result of the 2019 Transaction.  Dr. Crea also became the CEO and CSO of Oliphenol. Thus the face value of the Creagri Assets as reflected in that transaction appears to have been at least $2,450,000—the cash value paid, plus 40% of the value of the assets received. This estimate does not include the additional value of the inventory included in the Creagri Assets.

60.     Dr. Crea was more than 20% owner of the Debtor and was its chief officer. As a result of the 2019 Transaction Dr. Crea, or an entity controlled by him, became owner of more than 20% owner of Oliphenol and became its chief officer.  Plaintiffs are informed and believe and thereon allege that at the time of the 2019 Transaction, Oliphenol was an affiliate of the Debtor and an insider of the Debtor.

**Dr. Crea and Oliphenol Transfer a Security Interest in Creagri Assets to Ontario Inc., an Insider of Oliphenol**

61.     The Debtor's Information shows that $250,000 of the purchase price in the 2019 Transaction was styled as a "loan" from Ontario Inc. to Dr. Crea personally, which was then "assumed" by Oliphenol and "secured" to Ontario Inc. with a general security interest in all of Oliphenol's assets.  Plaintiffs are informed and believe and thereon allege that at the time of the

transaction the only assets held by Oliphenol were the Creagri Assets (or the funds with which to
purchase them, as the transactions appear to have been more or less simultaneous.)

62. The Debtor's Information reflects that at the time of the 2019 Transaction Oliphenol
was more than 20% owned by Raymond Chyc, and that Raymond Chyc was an officer of the
company. The Debtor's Information further reflects that Raymond Chyc was the sole owner of Ontario
Inc. The Debtor's Information further reflects that Raymond Chyc was the party other than Dr. Crea
who was primarily responsible for designing and implementing the 2019 Transaction.

63. Plaintiffs are informed and believe and thereon allege that Ontario Inc. is also an insider
of the Debtor.

64. Plaintiffs are informed and believe and thereon allege that Raymond Chyc and Dr. Crea
structured the 2019 Transaction specifically to create a security interest in the Creagri Assets then
owned by Oliphenol to be held by Ontario Inc.—a foreign company. The purpose of the transaction
was to defeat Creagri's creditors.

65. Oliphenol and Ontario Inc. are parties to a "Debt Assumption Agreement," dated
February 5, 2019, attached as Exhibit H, and included in what appears to have been the closing book
for the 2019 Transaction. The recitals of that agreement reflect that Ontario Inc. (owned 100% by
Raymond Chyc) loaned $250,000 to Dr. Crea in December of 2018. It appears that loan was
unsecured. It also states that Dr. Crea was the sole member of Caliscana, that Dr. Crea had transferred
the Creagri Assets to Caliscana, and from there to Oliphenol, and that Oliphenol would pay for part of
the assets from Caliscana by assuming the debt from Dr. Crea. (Nowhere does the document explain
why Dr. Crea is being paid for the assets that were purportedly provided by Caliscana.) The "Debt
Assumption Agreement" states that it is part of the asset purchase transaction of Creagri Assets by
Oliphenol.

66. Plaintiffs are informed and believe, and thereon allege, that the purpose of the 2019
Transaction was to transfer all assets of Creagri's business, including the trademarks "OLIVENOL,"
"OLIVENOL PLUS," and "HIDROX" and all related patents and intellectual property, to continue
Creagri's business without paying Creagri's creditors.

67. Further, Plaintiffs are informed and believe, and thereon allege, that once the 2019

Case: 21-04040   Doc# 21   Filed: 01/31/22   Entered: 01/31/22 18:11:33   Page 12 of
26

1  Transaction was complete, Oliphenol began using the Creagri Assets for its own business, including
2  by selling product acquired from Creagri to Creagri's customers.

3  68.    Plaintiffs are informed and believe, and thereon allege, that no shareholder meeting was
4  held in connection with the 2019 Transaction, that Dr. Crea did not inform any of the shareholders of
5  Creagri of the 2019 Transaction before it was completed, and that no bulk-sale notice was given in
6  connection with the 2019 Transaction.

7  69.    Due to Creagri's failure to pay its debts to Plaintiffs, Plaintiffs have been forced to
8  retain the undersigned counsel, and have incurred legal expenses which are recoverable under several
9  of the legal theories alleged below.

10                                **FIRST CLAIM FOR RELIEF**

11                      **(Fraudulent Transfer --11 U.S.C. § 548(a)(1)(A)**
12                           **Against Roberto Crea & Caliscana)**

13  70.    Plaintiffs reallege and incorporate herein by reference each and every allegation set
14  forth above in Paragraphs 1 through 69, and paragraph 83 below.

15  71.    The 2019 Transaction began with Dr. Crea transferring the Debtor's property--the
16  Creagri Assets--from the Debtor to Dr. Crea, who immediately transferred it to his wholly-owned
17  company, Caliscana.

18  72.    The 2019 Transaction occurred within two years of the Debtor filing its bankruptcy
19  petition.

20  73.    Although Caliscana is nominally a separate entity from Dr. Crea, its form as a separate
21  LLC must be disregarded, as Caliscana existed solely for the purpose of transferring the Creagri
22  Assets from the Debtor to Oliphenol, and thereby create the illusion of a separate step between Creagri
23  and Oliphenol.  Specifically:

24          a.    Caliscana was created on December 7, 2018, the same day that Dr. Crea
25                purportedly transferred the Creagri Assets to it.

26          b.    Dr. Crea was the sole member and manager of Caliscana pursuant to the
27                Statement of Information filed with the Secretary of State of California.

28          c.    Caliscana was registered as having the address of 1205 Lakeview Dr.,

Case: 21-04040   Doc# 21   Filed: 01/31/22   Entered: 01/31/22 18:11:33   Page 13 of
26

Hillsborough, CA, which is shown on Creagri Inc.'s schedules as being the personal address of Dr. Crea.

        d.    Plaintiffs are informed and believe, and thereon allege that Dr. Crea and Caliscana used the same attorney.

        e.    Plaintiffs are informed and believe and thereon allege that Caliscana did not have a separate business of any kind, any employees, any capitalization, or any assets; and that it was a mere conduit for passing the Creagri Assets to Oliphenol, and to hold the interest in Oliphenol for the benefit of Dr. Crea.

        f.    Pursuant to the documents provided by Dr. Crea, he transferred the assets from Caliscana to Oliphenol pursuant to the agreement dated January 21—two weeks after Caliscana was formed.

        g.    Plaintiffs are informed and believe and thereon allege that all of the funds paid for the Creagri Assets on behalf of Oliphenol were paid to Dr. Crea, or, if paid to Caliscana, was immediately paid to or on behalf of Dr. Crea.

74.    Plaintiffs are informed and believe and thereon allege that the 2019 Transaction was made by Dr. Crea through Caliscana with the intent to hinder, delay and defraud the Debtor and the Debtor's creditors by transferring all of the Creagri Assets to a new company—Oliphenol—without compensation to the Debtor and with only Dr. Crea and the other Defendants benefiting from the transaction. Factors supporting this allegation are also set forth in paragraph 84 below.

WHEREFORE, Plaintiffs respectfully request the relief hereinafter set forth.

**SECOND CLAIM FOR RELIEF**

**(Fraudulent Transfer Under 11 U.S.C. § 548(a)(1)(B)**
**Against Roberto Crea and Caliscana)**

75.    Plaintiffs reallege and incorporate herein by reference each and every allegation set forth above in Paragraphs 1 through 74.

76.    The 2019 Transaction was a transfer of an interest of the Debtor's property–namely, the Creagri Assets.

77.    The 2019 Transaction occurred within 2 years of the filing of the petition initiating the

Bankruptcy Case.

78.     Creagri received less than a reasonably equivalent value in exchange for the Creagri Assets.

79.     The alleged cancellation of the 2008 Bridge Notes held by Dr. Crea, which was purportedly the consideration to the Debtor in exchange for the Creagri Assets, had no value as by 2019, the Notes did not evidence the right to be paid any amount. In particular:

   a.     By the time of the 2019 Transaction, the 2008 Bridge Notes were not secured by a security interest in any of the Debtor's property.

   b.     By the time of the 2019 Transaction, the 2008 Bridge Notes were in default well beyond the limitations period for an enforcement action.

   c.      Plaintiffs are informed and believe, and thereon allege, that the Debtor did not take any action to reaffirm the obligation represented by the 2008 Bridge Notes after the 2009 Transaction. Plaintiffs are further informed and believe, and thereon allege that the recitation in the Creagri Sale Agreement that purportedly stated the amount due on the 2008 Bridge Notes was written by Dr. Crea or one of his agents for his own benefit and did not represent an acknowledgement by the Debtor of the Debt.

   d.     Plaintiffs are informed and believe, and thereon allege that the 2008 Bridge Notes were not actually cancelled as part of the 2019 Transaction.

80.     In the alternative, should it be determined that the 2008 Bridge Notes had some value at the time of the 2019 Transaction, and that the 2008 Bridge Notes were actually cancelled, Plaintiffs are informed and believe that the value of such cancellation was less than reasonably equivalent to the value of the Creagri Assets that were transferred. In particular, and without limitation, the amount that was stated as "due" in the Creagri Sale Agreement, and thus forgiven, appears to include ten years of accrued interest at the usurious rate of 12%. The alleged "agreed value" of the Creagri Assets at $1,750,000 is based on the "Renovo Negotiation," described in paragraphs 39 and 40 above, which not include the value of the Debtor's inventory.

81.     Plaintiffs are informed and believe and thereon allege, that the Debtor was insolvent at the time, or became insolvent, as a result of the 2019 Transaction because the transaction left the

Case: 21-04040   Doc# 21   Filed: 01/31/22   Entered: 01/31/22 18:11:33   Page 15 of 26

Debtor with no assets and several million dollars in debt.

WHEREFORE, Plaintiffs respectfully requests the relief hereinafter set forth.

### THIRD CLAIM FOR RELIEF

**(Violations of California Uniform Voidable Transactions Act, Cal. Civil Code §§ 3439.04(1)** *et seq.*, **Against Roberto Crea and Caliscana)**

82. Plaintiffs reallege and incorporate herein by reference each and every allegation set forth above in Paragraphs 1 through 74.

83. At the time of the 2019 Transaction, and at all times thereafter, Plaintiffs have had a right to payment from Creagri, as follows:

a. Valdevit had a right to payment as the holder of 17 promissory notes executed by Creagri between September 29, 2010, and February 1, 2015 (the "Valdevit Notes"). Each of the Valdevit Notes was due and payable in full upon Valdevit's demand. Valdevit made a demand for payment on December 22, 2017, less than six years before the Bankruptcy Case was filed. The Valdevit Notes therefore remain enforceable obligations of the Debtor.

b. Creagri owed Carr & Ferrell money for legal services rendered, for which Creagri was responsible under a written agreement with Carr & Ferrell (the "Carr & Ferrell Engagement Letter"), and which Creagri failed to pay within four years of the filing of the Bankruptcy Case.

84. Plaintiffs are informed and believe, and thereon allege, that in the 2019 Transaction by Dr. Crea, through his company Caliscana, transferred the Creagri Assets with the intent to defraud Valdevit, Carr & Ferrell, and Creagri's other creditors. The factors showing fraudulent intent based on the Debtor's Information include the following:

a. The Creagri Assets were transferred to an insider of Creagri – namely, Dr. Crea.

b. No shareholder meeting of Creagri was held in connection with the 2019 Transaction, and Dr. Crea did not inform any of the Creagri shareholders of the 2019 Transaction before it was completed.

c. Before the 2019 Transaction, Creagri had been sued and a judgment had been obtained against it.

Case: 21-04040   Doc# 21   Filed: 01/31/22   Entered: 01/31/22 18:11:33   Page 16 of 26

d.     The 2019 Transaction involved a transfer of substantially all of Creagri's assets.

e.     Creagri received no consideration for the sale of the Creagri Assets because the promissory notes that were purportedly cancelled as part of the sale were unenforceable and unsecured and were not actually cancelled in the 2019 Transaction.

f.     Creagri was insolvent at the time of the 2019 transaction, or became insolvent due to the 2019 Transaction, as evidenced by Creagri's lack of assets and significant debt and the filing of the Bankruptcy Case after the transaction.

g.     The 2019 Transaction occurred shortly before a large payment was due from Creagri to one of its former landlords as a result of Creagri's defaults under a lease.

85.     Plaintiffs were injured as a result of the 2019 Transaction because the transaction resulted in the loss of substantially all of Creagri's Assets without any payment to the Debtor or its creditors, including Plaintiffs.

86.     Plaintiffs are informed and believe, and thereon allege, that had the 2019 Transaction never occurred, the Debtor could have repaid some or all of its debts to Plaintiffs. The Creagri Assets had value, as evidenced by the Renovo negotiations and the new third-party investors' payment of $1,750,000 to Dr. Crea as part of the 2019 Transaction plus 40% ownership in the new company Oliphenol. The 2019 Transaction was therefore a substantial factor causing the injuries to Plaintiffs.

87.     This claim for relief is brought by the Plaintiffs directly on their own behalf, and on behalf of the Bankruptcy Estate under Bankruptcy Code Section 544.

WHEREFORE, Plaintiffs respectfully request the relief hereinafter set forth.

## FOURTH CLAIM FOR RELIEF

### (Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(A) and 550 Against Oliphenol)

88.     Plaintiffs reallege and incorporate herein by reference each and every allegation set forth above in Paragraphs 1 through 74, and 84.

89.     The 2019 Transaction began with Dr. Crea transferring the Debtor's property--the Creagri Assets--from the Debtor to Dr. Crea, who immediately transferred it to his wholly-owned company, Caliscana. Caliscana then immediately transferred the Creagri Assets to Oliphenol.

90.     The 2019 Transaction occurred within two years of the Debtor filing its bankruptcy

Case: 21-04040   Doc# 21   Filed: 01/31/22   Entered: 01/31/22 18:11:33   Page 17 of 26

petition.

91.     Although Caliscana is nominally a separate entity from Dr. Crea, its form as a separate LLC must be disregarded, as Caliscana existed solely for the purpose of transferring the Creagri Assets from the Debtor to Oliphenol, and thereby to create the illusion of a separate step between Creagri and Oliphenol, as set forth above in paragraph 73 above.

92.     Plaintiffs are informed and believe and thereon allege that the 2019 Transaction was made by Dr. Crea with Caliscana to Oliphenol with the intent to hinder, delay and defraud the Debtor's creditors by transferring all of the Creagri Assets to Oliphenol without compensation to any of the Debtor's creditors and with only Dr. Crea and the other Defendants benefitting from the transaction. Factors supporting this allegation are also set forth in paragraph 84 above.

93.     Plaintiffs seek to recover the Creagri Assets, or the value of the Creagri Assets if ordered by the court, from Oliphenol as the initial transferee of the Creagri Assets, as the transfer from the Debtor, through Dr. Crea and Caliscana, to Oliphenol was part of a single transaction designed from start to finish. The goal was to transfer the Creagri Assets to Oliphenol free from the Debtor's creditors' claims.

94.     In the alternative, Plaintiffs seek to recover the Creagri Assets, or the value of the Creagri Assets if ordered by the court, pursuant to Bankruptcy Code §550(a)(2). Plaintiffs are informed and believe and thereon allege that Oliphenol is not a good faith transferee as Dr. Crea and Raymond Chyc (or entities that they control) own and control Oliphenol.  Plaintiffs are informed and believe and thereon allege that Dr. Crea and Raymond Chyc structured the 2019 Transaction with the specific intent of shielding the Creagri Assets from the Debtor's creditors.

WHEREFORE, Plaintiffs respectfully request the relief hereinafter set forth.

## FIFTH CLAIM FOR RELIEF

**(Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(B) and 550 Against Oliphenol)**

95.     Plaintiffs reallege and incorporate herein by reference each and every allegation set forth above in Paragraphs 1 through 73, and 76 through 81.

96.     The 2019 Transaction was a transfer of an interest of the Debtor in property – namely, the Creagri Assets.

Case: 21-04040   Doc# 21   Filed: 01/31/22   Entered: 01/31/22 18:11:33   Page 18 of 26

97. The 2019 Transaction occurred within 2 years of the filing of the petition initiating the Bankruptcy Case. The 2019 Transaction began with Dr. Crea transferring the Debtor's property--the Creagri Assets--from the Debtor to Dr. Crea, who immediately transferred it to his wholly-owned company, Caliscana. Caliscana then transferred the Creagri Assets to Oliphenol, which simultaneously transferred a security interest to Ontario Inc.

98. The 2019 Transaction occurred within two years of the Debtor filing its bankruptcy petition.

99. Although Caliscana is nominally a separate entity from Dr. Crea, its form as a separate limited liability company must be disregarded, as Caliscana existed solely for the purpose of transferring the Creagri Assets from the Debtor to Oliphenol, and thereby created the illusion of a separate step between Creagri and Oliphenol, as set forth above in paragraph 73 above.

100. Creagri received less than a reasonably equivalent value in exchange for the Creagri Assets as set forth in paragraphs 79 and 80 above.

101. Plaintiffs are informed and believe and thereon allege, that Creagri was insolvent at the time, or became insolvent, as a result of the 2019 Transaction because the transaction left Creagri with no assets and millions of dollars in debt.

102. Plaintiffs seek to recover the Creagri Assets, or the value of the Creagri Assets, if ordered by the court, from Oliphenol as the initial transferee of the Creagri Assets, as the transfer from the Debtor, through Dr. Crea and Caliscana to Oliphenol was part of a single transaction. It was designed from start to finish with the goal to transfer the Creagri Assets to Oliphenol free for the Debtor's creditors' claims.

103. In the alternative, Plaintiffs seek to recover the Creagri Assets, or the value of the Creagri Assets if ordered by the court, pursuant to Bankruptcy Code §550(a)(2)**.** Plaintiffs are informed and believe and thereon allege that Oliphenol is not a good faith transferee as Dr. Crea and Raymond Chyc (or entities that they control) own and control Oliphenol. Plaintiffs are informed and believe and thereon allege that Dr. Crea and Raymond Chyc structured the 2019 Transaction with the specific intent of shielding the Creagri Assets from the Debtor's creditors.

WHEREFORE, Plaintiffs respectfully request the relief hereinafter set forth.

Case: 21-04040   Doc# 21   Filed: 01/31/22   Entered: 01/31/22 18:11:33   Page 19 of 26

## SIXTH CLAIM FOR RELIEF

**(Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(A) and 550
Against Ontario Inc.)**

104.    Plaintiffs reallege and incorporate herein by reference each and every allegation set forth above in Paragraphs 1 through 74, and 84.

105.    The 2019 Transaction began with Dr. Crea transferring the Debtor's property--the Creagri Assets--from the Debtor to Dr. Crea, who immediately transferred it to his wholly-owned company, Caliscana, who then immediately transferred it to Oliphenol with a security interest to Ontario Inc.

106.    The 2019 Transaction occurred within two years of the Debtor filing its bankruptcy petition.

107.    Although Caliscana is nominally a separate entity from Dr. Crea, its form as a separate LLC must be disregarded, as Caliscana existed solely for the purpose of transferring the Creagri Assets from the Debtor to Oliphenol, and thereby create the illusion of a separate step between Creagri and Oliphenol for the reasons set forth in paragraph 73, above.

108.     Plaintiffs are informed and believe and thereon allege that the 2019 Transaction was completed by Dr. Crea through Caliscana and by Raymond Chyc, who owns Ontario Inc., with the intent to hinder, delay and defraud Creagri's creditors by transferring all of the Creagri Assets to Oliphenol with a security interest in favor of Ontario Inc. without compensation to any of Creagri's creditors and with only Defendants benefiting from the transaction. Factors supporting this allegation are also set forth in paragraph 84.

109.    Plaintiffs seek to recover the security interest in the Creagri Assets, or the value if ordered by the court, from Ontario Inc. as the initial transferee of the Creagri Assets, as the transfer from the Debtor, through Dr. Crea and Caliscana, to Oliphenol was part of a single transaction. It was designed from start to finish with the goal to transfer the Creagri Assets to Oliphenol with a security interest in favor of Ontario, Inc. free from the Debtor's creditors' claims.

110.    In the alternative, Plaintiffs seek to recover the security interest in Creagri Assets, or its value if ordered by the court, pursuant to Bankruptcy Code § 550 (a)(2)**.** Plaintiffs are informed and

1  believe and thereon allege that Ontario Inc. is not a good faith transferee because Raymond Chyc (or

2  entities that he controls) own and control Oliphenol and Ontario Inc. Plaintiffs are informed and

3  believe and thereon allege that Dr. Crea and Raymond Chyc structured the 2019 Transaction with the

4  specific intent of shielding the Creagri Assets from the Debtor's creditors.

5      WHEREFORE, Plaintiffs respectfully request the relief hereinafter set forth.

6      **SEVENTH CLAIM FOR RELIEF**

7      **(Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(B) and 550 Against Ontario, Inc.)**

8      111.    Plaintiffs reallege and incorporate herein by reference each and every allegation set

9  forth above in Paragraphs 1 through 74, and 76 through 81.

10     112.    The 2019 Transaction was a transfer of an interest of the Debtor in property – namely,

11 the Creagri Assets.

12     113.    The 2019 Transaction occurred within 2 years of the filing of the petition initiating the

13 Bankruptcy Case.

14     114.    Creagri received less than a reasonably equivalent value in exchange for the Creagri

15 Assets for the reasons set forth in Paragraphs 79 and 80 above.

16     115.    Plaintiffs are informed and believe and thereon allege, that the Debtor was insolvent at

17 the time, or became insolvent, as a result of the 2019 Transaction because the transaction left the

18 Debtor with no assets and several million dollars in debt.

19     116.    Plaintiffs seek to recover the security interest in the Creagri Assets, or the value if

20 ordered by the court, from Ontario Inc. as the initial transferee of the Creagri Assets, as the transfer

21 from the Debtor, through Dr. Crea and Caliscana, to Oliphenol was part of a single transaction. It was

22 designed from start to finish with the goal to transfer the Creagri Assets to Oliphenol with a security

23 interest to Ontario, Inc. free for the Debtor's creditors' claims.

24     117.    In the alternative, Plaintiffs seek to recover the security interest in Creagri Assets, or its

25 value if ordered by the court, pursuant to Bankruptcy Code § 550 (a)(2). Plaintiffs are informed and

26 believe and thereon allege that Ontario, Inc. is not a good faith transferee because Raymond Chyc (or

27 entities that he controls) own and control Oliphenol and Ontario Inc. Plaintiffs are informed and

28 believe and thereon allege that Dr. Crea and Raymond Chyc structured the 2019 Transaction with the

specific intent of shielding the Creagri Assets from the Debtor's creditors.

WHEREFORE, Plaintiffs respectfully request the relief hereinafter set forth.

## EIGHTH CLAIM FOR RELIEF

### (Breach of Fiduciary Duty Under Cal. Corps. Code § 309 Against Dr. Crea)

118. Plaintiffs reallege and incorporate herein by reference each and every allegation set forth above in Paragraphs 1 through 79.

119. Dr. Crea owed fiduciary duties to the Debtor and its shareholders by virtue of his status as the CEO, Director, and controlling shareholder of the Debtor.

120. Plaintiffs are informed and believe, and thereon allege, that Dr. Crea entered into the 2019 Transaction solely for his own benefit and not for the benefit of the Debtor.

121. Dr. Crea breached his fiduciary duties to the Debtor by causing it to sell substantially all of its assets in the 2019 Transaction without any compensation, and by retaining the amount he received from Oliphenol and Ontario Inc. in exchange for the Creagri Assets.

122. Plaintiffs are informed and believe, and thereon allege, that Dr. Crea breached his fiduciary duty to the Debtor by, among other things, a) failing to hold a properly called board of directors meeting to approve the 2019 Transaction, and particularly the Creagri Sale Agreement; b) purporting to reaffirm the amount of the 2008 Bridge Notes which had expired, and including in that amount usurious interest; c) failing to hold a shareholder meeting to approve the sale of substantially all of the Debtor's assets; and d) apparently presenting false documents in the context of the 2019 Transaction to reflect a board of directors resolution and a shareholder resolution when neither had been properly issued.

123. Plaintiffs are informed and believe, and thereon allege, that had the 2019 Transaction never occurred, the Debtor could have sold the Creagri Assets for an amount resulting in compensation to the Debtor, and could have repaid some or all of its debts to Plaintiffs and to other creditors. The Creagri Assets had value, as evidenced by the new third-party investors' payment of $1,750,000 and granting of an ownership interest in Oliphenol to Dr. Crea as part of the 2019 Transaction.

124. Plaintiffs purchased the right to pursue this action against Dr. Crea on behalf of the

Debtor and the Estate, which will be entitled to a portion of any amount recovered as set forth the in the order of the Bankruptcy Court approving the purchase by Plaintiffs.

WHEREFORE, Plaintiffs respectfully request the relief hereinafter set forth.

### NINTH CLAIM FOR RELEIF

#### (Breach of Contract/Successor Liability Against Oliphenol)

125. Plaintiffs reallege and incorporate herein by reference each and every allegation set forth above in Paragraphs 1 through 84.

126. Creagri breached its contracts with Valdevit as follows:

    a. Creagri entered into contracts with Valdevit in the form of the Valdevit Notes.

    b. Valdevit fully performed all of his obligations under the Valdevit Notes. Among other things, Valdevit loaned the money required under the Valdevit Notes to Creagri, and made a demand for payment under the Valdevit Notes in accordance with the instruments' express terms.

    c. Creagri failed to perform its obligations under the Valdevit Notes by failing to pay to Valdevit all principal and accrued interest thereunder on or after the date of Valdevit's demand for payment.

    d. Valdevit was harmed by Creagri's failure to pay the amounts due under the Valdevit Notes because at least $3,208,488.58 was due and payable under the Valdevit Notes as of June 30, 2021, and interest continues to accrue.

    e. Creagri's breach of contract was a substantial factor in causing Valdevit's harm because Creagri was liable under the Valdevit Notes and failed to repay the Valdevit Notes.

127. Creagri breached its contracts with Carr & Ferrell as follows:

    a. Creagri entered into a contract with Carr & Ferrell in the form of the Carr & Ferrell Engagement Letter.

    b. Carr & Ferrell fully performed all of its obligations under the Carr & Ferrell Engagement Letter. Among other things, Carr & Ferrell performed all legal services required of it under the Carr & Ferrell Engagement Letter.

    c. Creagri failed to perform its obligations under the Carr & Ferrell Engagement

Case: 21-04040   Doc# 21   Filed: 01/31/22   Entered: 01/31/22 18:11:33   Page 23 of 26

Letter by failing to pay the invoices issued by Carr & Ferrell for legal services performed and costs incurred on behalf of Creagri.

      d.    Carr & Ferrell was harmed by Creagri's failure to pay the amounts due under the Carr & Ferrell Engagement Letter because at least $878,986.47 was due and payable under the Carr & Ferrell Engagement Letter as of May 12, 2021, and interest continues to accrue.

      e.    Creagri's breach of contract was a substantial factor in causing Carr & Ferrell's harm because Creagri was liable under the Carr & Ferrell Engagement Letter and failed to pay the amounts due thereunder.

128.    Oliphenol is liable for the debts of Creagri under the doctrine of successor liability for at least three reasons. First, based on the Debtor's Information, Oliphenol is merely a continuation of Creagri because no adequate consideration was given to Creagri in exchange for the Creagri Assets in the 2019 Transaction, and because Dr. Crea was the CEO, a director, and the majority shareholder of Creagri and is the CEO, CSO and owner of a 40% membership interest in Oliphenol.

129.    Second, Plaintiffs are informed and believe, and thereon allege, that the 2019 Transaction was entered into fraudulently to escape liability for Creagri's debts, because the 2019 Transaction allowed Oliphenol to assume all of the assets and continue the business of Creagri without paying Creagri any compensation and without expressly assuming Creagri's debts.

130.    Third, Plaintiffs are informed and believe, and thereon allege, that Oliphenol has assumed and continued to use the names, products, formulas, proprietary information, trademarks, customer lists and suppliers of Creagri without payment.

      WHEREFORE, Plaintiffs respectfully request the relief hereinafter set forth.

## TENTH CLAIM FOR RELIEF

**(Unfair Business Practices Under Cal. Bus. & Profs. Code §17200 Against All Defendants)**

131.    Plaintiffs reallege and incorporate herein by reference each and every allegation set forth above in Paragraphs 1 through 79.

132.    The Defendants committed acts that are unlawful in the completion of the 2019 Transaction because the transaction violated various laws including, without limitation, 11 U.S.C. § 548, California Civil Code §§ 3439 *et seq.*, and California Corporations Code § 309.

Case: 21-04040   Doc# 21   Filed: 01/31/22   Entered: 01/31/22 18:11:33   Page 24 of 26

133.     Plaintiffs suffered injuries in fact and loss of money due to the 2019 Transaction because the transaction resulted in the loss of substantially all of Creagri's Assets without any payment to Creagri or its creditors at a time when Creagri owned money to the Plaintiffs.

WHEREFORE, Plaintiffs respectfully request the relief hereinafter set forth.

**PRAYER**

**As to the First and Second Claim for Relief against Dr. Crea and Caliscana:**

1.     Avoidance of the 2019 Transaction and recovery from each of these Defendants of the Creagri Assets received.

2.     In the alternative, restitution of the value of the Creagri Assets at the time of the 2019 Transaction, or such higher value as may be required to avoid injustice, and all profits derived from use of the Creagri Assets since the 2019 Transaction.

**As to the Third Claim for Relief against Dr. Crea and Caliscana:**

3.     Avoidance of the 2019 Transaction and recovery from each of these Defendants.

4.     A constructive trust over the Creagri Assets and all proceeds derived therefrom.

5.     A temporary and permanent injunction prohibiting these Defendants from further transferring the Creagri Assets and any proceeds derived therefrom, except in accordance with an order of this Court.

6.     An award of money damages in an amount to be determined and according to proof, together with interest thereon to the date the judgment is satisfied.

**As to the Fourth and Fifth Claims for Relief against Oliphenol:**

7.     Avoidance of the 2019 Transaction and recovery from this Defendant of the Creagri Assets received by it.

8.     In the alternative, restitution of the value of the Creagri Assets at the time of the 2019 Transaction, or such higher value as may be required to avoid injustice, and all profits derived from use of the Creagri Assets since the 2019 Transaction.

**As to the Sixth and Seventh Claims for Relief against Oliphenol:**

9.     Avoidance of the 2019 Transaction and recovery from this Defendant of the Creagri Assets received by it.

Case: 21-04040   Doc# 21   Filed: 01/31/22   Entered: 01/31/22 18:11:33   Page 25 of 26

10.     In the alternative, restitution of the value of the Creagri Assets at the time of the 2019 Transaction, or such higher value as may be required to avoid injustice, and all profits derived from use of the Creagri Assets since the 2019 Transaction.

**As to the Eighth Claim for Relief against Dr. Crea:**

11.     Direct and consequential damages resulting from Dr. Crea's breach of fiduciary duty in an amount to be proved.

**As to the Ninth Claim for Relief against Oliphenol:**

12.     Damages in the amount of all of the outstanding claims against the Debtor.

**As to the Tenth Claim for Relief against all Defendants:**

13.     Direct damages in an amount to be proved.

**As to all Claims for Relief against all Defendants:**

14.     An award of Plaintiffs' reasonable costs, disbursements, and attorneys' and expert fees; and

15.     Such further relief as the Court deems proper.

Dated: January 31, 2022                          BINDER & MALTER LLP


                                                 _____/s/Wendy W. Smith_____
                                                 Wendy W. Smith, Attorneys Creditor
                                                 Carr & Ferrell LLP

Dated: January 31, 2022                          SSL LAW FIRM LLP


                                                 _____/s/Ivo Keller_____
                                                 Ivo Keller, Attorneys Creditor
                                                 Ezio Valdevit